

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

FEB 1 1 2005

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

DAVID MIDDLEBROOK, et al.,          §
                                    §
            Plaintiffs,             §
                                    §   Civil Action No. 3:04-CV-2294-D
VS.                                 §
                                    §
STEVEN ANDERSON, et al.,            §
                                    §
            Defendants.             §

MEMORANDUM OPINION
AND ORDER

Defendants move to dismiss this defamation action for lack of personal jurisdiction and venue. The court concludes that plaintiffs have made a prima facie showing that defendants have sufficient minimum contacts with the state of Texas to support specific jurisdiction, and that defendants have failed to demonstrate that exercising jurisdiction over them will offend traditional notions of fair play and substantial justice. It also holds that venue is proper in this forum. Accordingly, the court denies the motion.

I

Plaintiffs David Middlebrook ("Middlebrook"), James Guinn ("J. Guinn"), Donald Guinn ("D. Guinn"), and World Healing Center Church, Inc., d/b/a Benny Hinn Ministries sue defendants Steven Anderson ("Anderson")[1] and Healing Waters Church, Inc. ("HWC") for defamation based on statements posted on an Internet website—steve4u.com—and transmitted by email messages into, *inter alia*, the state of Texas. Anderson is the Pastor and chief operating officer of defendant HWC,

---

[1] Defendants point out that Anderson's name is spelled "Stephen." Ds. Br. at 1.

located in Riverside, California.[2]  The website includes information about alleged corruption and malfeasance involving or related to religious ministries nationwide.

In 2004 Anderson placed on his website a story that accused plaintiffs Middlebrook, J. Guinn, and D. Guinn of various types of wrongdoing.  Middlebrook is an attorney who offices in Irving, Dallas County, Texas.  J. Guinn and D. Guinn are Irving-based certified public accountants and members of Guinn, Smith & Co. ("Guinn, Smith").  Among the accusations was an assertion that the three plaintiffs were operating a "'Protection Racket' used by the Mob." Ps. App. [18].[3]  The story also claimed that Middlebrook and Benny Hinn had a close business relationship with a person responsible for a Ponzi scheme and intimated that the plaintiffs were involved in or benefited from the scheme.

The website also referred several times to the fact that Middlebrook had been arrested in Texas in 2003 for child indecency, and it displayed his "mug shot" and provided a link to his jail book-in information.  The website acknowledged the grand jury had declined to indict Middlebrook,

_____

[2]Plaintiffs allege that HWC is the alter ego of Anderson, and they do not rely on any conduct by HWC that is independent of Anderson's.  In discussing defendants' relevant conduct, the court refers to it as if undertaken by Anderson, although it may also be imputed to HWC.

[3]Plaintiffs attached their documentary evidence to their brief rather than include it in the required evidentiary appendix.  They also failed to number the pages of their appendix sequentially and to cite their appendix in their brief, in the manner required by the court's local civil rules.  *See* N.D. Tex. Civ. R. 7.1(i)(1), (2) and (4), and 7.2(e).  The court has placed numbers on the pages of plaintiffs' documentary evidence, beginning with the first page of Middlebrook's affidavit.  The bracketed page numbers that appear in this memorandum opinion are those supplied editorially by the court.
Plaintiffs also filed a defective brief.  It exceeds ten pages and does not contain a table of contents with page references or an alphabetically-arranged table of cases, statutes, and other authorities cited, with page references to the location of all citations.  *See* Rule 7.2(d).  Because these defects have not interfered with the decisional process of the court, it has not ordered the pleadings unfiled, and it has decided defendants' motion on the present briefing.  The court expects plaintiffs' counsel to comply fully with the local civil rules in future filings in this case.

and that the District Attorney had dropped the charges, because Middlebrook's estranged wife had falsely accused him of child indecency to gain an advantage in their divorce proceedings. (Plaintiffs complain that this information was presented in a misleading manner.)

Anderson also posted on the website a request for information about Middlebrook. On the webpage that contained the statements about the protection racket and association with the Ponzi scheme, Anderson included the following solicitation:

> HELP WANTED!
> PRIVATE INVESTIGATORS NEEDED — PHOTOGRAPHERS NEEDED INFO, DOCUMENTS AND PICTURES OF DAVID MIDDLEBROOK WANTED TO POST HERE WHERE HE LIVES, SPENDS MONEY, WHO HE HANGS OUT WITH.  THIS ATTORNEY'S WHOLE LIFE NEEDS TO BE EXPOSED HERE. INQUIRE WITHIN CLICK HERE HELP, I CAN'T DO IT ALONE!

Ps. App. [19] (hyperlink underlining in original).

Of central importance to resolution of the instant motion to dismiss, Anderson also transmitted emails into Texas and elsewhere that contained some of the allegations included on the website, referred readers to the website for more information, and solicited investigative help in terms similar to that used on the website.  Plaintiffs contend that Anderson obtained the mailing list for his mass emailing from a seminar he attended in Texas in 2002 held by Middlebrook's law firm and Guinn, Smith.  Several Middlebrook clients located in Texas received the emails.

Defendants move to dismiss under Fed. R. Civ. P. 12(b)(2), contending the court lacks personal jurisdiction over them.  Alternatively, they move to dismiss under Rule 12(b)(3) based on improper venue.

II

"When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)). The determination whether a federal district court has personal jurisdiction over a nonresident defendant is bipartite. The court first decides whether the long-arm statute of the state in which it sits confers personal jurisdiction over the defendant. If it does, the court then resolves whether the exercise of jurisdiction is consistent with due process under the United States Constitution. *See Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999). Because the Texas long-arm statute extends to the limits of due process, the court need only consider whether exercising jurisdiction over defendants would be consistent with the Due Process Clause of the Fourteenth Amendment. *See id.*; *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000).

"The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.' To comport with due process, the defendant's conduct in connection with the forum state must be such that he 'should reasonably anticipate being haled into court' in the forum state." *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (footnotes omitted). To determine whether exercising jurisdiction would satisfy traditional notions of fair play and substantial justice, the court examines (1) the defendant's burden, (2) the forum state's interests,

- 4 -

(3) the plaintiff's interest in convenient and effective relief, (4) the judicial system's interest in efficient resolution of controversies, and (5) the states' shared interest in fundamental social policies. *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 421 (5th Cir. 1993).

A defendant's contacts with the forum may support either specific or general jurisdiction. *Mink*, 190 F.3d at 336. "For the court properly to assert specific personal jurisdiction, the defendant must have 'purposefully directed' his activities at residents of the forum, and the litigation must result from alleged injuries that 'arise out of or relate to' the defendant's activities directed at the forum." *Archer & White, Inc. v. Tishler*, 2003 WL 22456806, at *2 (N.D. Tex. Oct. 23, 2003) (Fitzwater, J.) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). "General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are 'continuous and systematic.'" *Mink*, 190 F.3d at 336 (citations omitted).

"When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits. Therefore, in a no-hearing situation, a plaintiff satisfies his burden by presenting a *prima facie* case for personal jurisdiction." *Latshaw*, 167 F.3d at 211 (footnotes omitted). "This liberal standard, however, does not require the court to credit conclusory allegations, even if they remain uncontradicted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, No. 3:00-CV-1165-D, slip op. at 5 (N.D. Tex. Sept. 15, 2000) (Fitzwater, J.) (citing *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 326 n.16 (5th Cir. 1996)), *aff'd*, 253 F.3d 865, 869 (5th Cir. 2001) (per curiam).

III

The court need only decide[4] whether plaintiffs have established a prima facie case of specific jurisdiction on the basis that defendants sent email messages to Texas that included material that is a basis for plaintiffs' defamation claim.[5] "A single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." *Lewis v. Fresne*, 252 F.3d 352, 358-59 (5th Cir. 2001) (citing *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 332-3 (5th Cir. 1982)). A defendant's transmission of a communication into the forum state is sufficient to be considered purposeful availment if the content of that communication gives rise to an intentional tort cause of action. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999); *see Brown*, 688 F.2d at 333-34; *Long v. Grafton Executive Search, LLC*, 263 F.Supp.2d 1085, 1089 (N.D. Tex. 2003) (Godbey, J.) (defendant sent defamatory email to employment agency in Texas); *Zidon v. Pickrell*,

---

[4]The briefing relates to other issues that need not be resolved, including whether specific jurisdiction can be established under the "effects" test of *Calder v. Jones*, 465 U.S. 783 (1984). As *Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002), emphasizes, however, "the 'effects' test is but one facet of the ordinary minimum contacts analysis, to be considered as part of the full range of the defendant's contacts with the forum," *id.* at 473. "*Calder*'s 'effects' test 'is not a substitute for a nonresident's minimum contacts that demonstrate purposeful availment of the benefits of the forum state." *Panda Brandywine*, 253 F.3d at 869 (quoting *Allred v. Moore & Peterson*, 117 F.3d 278, 286 (5th Cir. 1997)). "'[T]he key to *Calder* is that effects of an alleged intentional tort are to be assessed as *part* of the analysis of the defendant's relevant contacts with the forum.'" *Id.* (quoting *Allred*, 117 F.3d at 286, and *Wallace v. Herron*, 778 F.2d 391, 395 (7th Cir. 1985)). The court has determined that defendants have sufficient minimum contacts with the state of Texas based on the transmission of emails into the state that contain material that is the subject of plaintiffs' defamation cause of action.

[5]Plaintiffs argue generally that the court has personal jurisdiction. They do not specify whether defendants' contacts support the exercise of specific jurisdiction, general jurisdiction, or both. The court treats plaintiffs' response as arguing for specific jurisdiction, however, because they cite specific jurisdiction cases, and they do not argue that any contacts are "continuous and systematic." Moreover, they have not alleged facts that typically underlie general jurisdiction, such as property ownership, payment of taxes, frequent travel, regular conduct of business, or maintenance of bank accounts in Texas.

344 F.Supp.2d 624, 632 (D.N.D. 2004) (defendant particularly and directly targeted North Dakota with, *inter alia*, emails); *First Act, Inc. v. Brook Mays Music Co.*, 311 F.Supp.2d 258, 261-63 (D. Mass. 2004) (defendant sent bulk email to 8,000 addresses, of which 60 addresses belonged to recipients with Massachusetts mailing addresses according to mailing list defendant maintained and controlled).

Plaintiffs allege that defendants sent the allegedly-defamatory statements about them to various persons located in Texas "by deliberately and purposefully directing messages containing these statements about plaintiffs to various electronic mail addresses of persons located in the State of Texas," including persons within this district. Compl. ¶ 22. They aver that when HWC and Anderson did so, they intended that the messages be delivered to, and read by, persons located in Texas, and that Anderson and HWC knew or should have known that the messages would be delivered to, and read by, persons located in Texas. *Id.* ¶¶ 24 & 25. Plaintiffs contend the email messages were false and defamatory. *Id.* ¶ 26. As noted above, the court accepts these allegations as true if they remain uncontroverted.

Defendants dispute the allegations, however. Anderson avers that any such emails were sent to email addresses, not to geographical addresses, that defendants did not intend for the messages to be viewed by persons in a particular state, such as Texas, and that he does not know where the recipients reside or where they receive email. He also states that the emails were not focused on Texas and that they lacked any kind of geographical focus.

In response, plaintiffs have adduced evidence that in 2002 Anderson attended a seminar in

- 7 -

Irving, Texas sponsored by Middlebrook's law firm and Guinn, Smith.[6]  Based on the identities of

the persons who received defendants' mass email transmission[7] and the attendees at the

seminar—most of whom were persons and organizational representatives from Texas—Anderson and

the Guinns concluded that defendants used a list of seminar attendees for their list of email recipients.

Defendants contest this evidence on the ground that it is speculative,[8] and that it is "improper"

---

[6]Defendants appear to contend that plaintiffs' reliance on evidence of Anderson's presence at the meeting violates the attorney-client privilege because Anderson spoke to Middlebrook at the seminar about representing him in litigation in California.  First, the attorney-client privilege only applies when there is an the attorney-client relationship.  *See, e.g., Boring & Tunneling Co. of Am., Inc. v. Salazar*, 782 S.W.2d 284, 289 (Tex. App. 1989, no writ) ("Under Tex. R. Civ. Evid. 503, one must be a client before one may claim the privilege.").  Middlebrook denies that he agreed to represent Anderson, and Anderson, in his second affidavit, merely avers that he considered the discussions confidential, not that an attorney-client relationship was formed.  Second, if defendants intend to invoke the attorney-client privilege to bar Middlebrook from revealing Anderson's *physical presence* at a seminar (it is not clear whether they do), the attempt would appear to be frivolous.  *See id.* (stating that client has privilege to refuse to disclose and to prevent disclosure of *confidential communications*).

[7]Defendants posit in their reply brief that plaintiffs have failed to offer evidence that defendants sent the emails in question.  This argument appears disingenuous in view of statements in Anderson's first affidavit, in which he essentially concedes that defendants transmitted the email mass mailing.  *See* Ds. App. 5 ("Defendants did not intend for any such e-mail messages to be viewed by persons in a specific state, such as Texas.  I personally have no idea where these e-mail recipients reside, or where they receive their e-mails.").  Moreover, the email sent to Ruby Kuhmichel contains the statement that it is "From: Rev. Steve Anderson [mailto:Revsteve@steve4u.com]."  Ps. App. [30] (brackets in original).  Even if the court disregards the subsequent transmissions reflected on the document, the portion that shows that it originated from Anderson is admissible under Fed. R. Evid. 801(d)(2)(A) as a party admission, and the allegedly defamatory material is not hearsay because it is not offered for its truth, *see, e.g., Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250, 261 (5th Cir. 1980) ("Hearsay is defined as 'a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.'" (quoting Fed. R. Evid. 801(c)).  Indeed, plaintiffs contend the document is defamatory because it contains *false* statements.  Instead, the allegedly-defamatory parts of the email are admissible as verbal acts, i.e., the words used give rise to legal consequences.  *See, e.g., United States v. Cardascia*, 951 F.2d 474, 486-87 (2d Cir. 1991) (criminal case) ("Statements not considered hearsay are typically verbal acts that give rise to legal consequences." (citations omitted)).

[8]They do not object to it as conclusory.

- 8 -

because it is not a statement of fact based on personal knowledge. They also rely on a second affidavit from Anderson, submitted in support of their reply brief, in which he denies that he obtained a list of attendees from the 2002 Texas seminar and that he used such a list for any purpose.[9]

Plaintiffs have made a prima facie showing that defendants specifically sent emails into the state of Texas, with knowledge that the emails were being sent to Texas recipients, that contained materials that plaintiffs allege are defamatory, and that are the subject of the defamation claim that is the basis of this lawsuit. According to their evidence, Anderson attended a seminar in Texas that was attended primarily by persons and representatives of organizations from Texas. Based on circumstantial evidence, plaintiffs aver that defendants used for their list of email recipients a list of persons who attended the seminar. Plaintiffs' prima facie case is admittedly circumstantial in this respect, but circumstantial proof is not the same as speculative evidence, it is the equivalent of direct evidence. *See United States v. Bland*, 653 F.2d 989, 996 (5th Cir. Unit A Aug. 1981) (criminal case) ("circumstantial evidence is to be treated no differently than direct evidence"). And defendants cannot defeat plaintiffs' prima facie case based on the statements in Anderson's second affidavit because conflicts in the evidence must be resolved in plaintiffs' favor for purposes of deciding whether they have established a prima facie case.

Accordingly, plaintiffs have demonstrated a prima facie case of specific jurisdiction that satisfies the minimum contacts prong of the due process test. They have established that defendants purposefully directed emails to persons in the state of Texas that included allegedly-defamatory

---

[9]The court will assume *arguendo* that evidence presented at the reply brief stage may be properly considered. Under the fact-resolution regimen, however, it must still yield to plaintiffs' evidence under the rule that factual conflicts presented by the affidavits are resolved in favor of plaintiffs.

statements, and that plaintiffs' defamation claim arises out of and is related to, *inter alia*, these contacts.

IV

Once plaintiffs establish minimum contacts between defendants and the forum State, the burden of proof shifts to defendants to show that the assertion of jurisdiction is unfair and unreasonable. *Wien Air*, 195 F.3d at 215. "Once there has been a determination that the defendant purposefully directed its activities at the forum state, the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201, 207 (5th Cir. 1996) (quoting *Burger King Corp.*, 471 U.S. at 477). As noted above, "[w]hen determining the fundamental fairness issue this court will normally examine (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies." *Id.* (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

Defendants have made no attempt to meet this burden, relying instead only on the absence of sufficient minimum contacts to establish specific jurisdiction. They certainly have not made a compelling case that other considerations render jurisdiction unreasonable.

V

Alternatively, defendants move to dismiss based on improper venue, contending that, under 28 U.S.C. § 1391(a)(2), a substantial part of the events that give rise to the lawsuit occurred in

- 10 -

California, if anywhere, and any damages to plaintiffs occurred nationwide.[10]

A defendant moving to dismiss under Rule 12(b)(3) on the ground of improper venue bears the burden of demonstrating that the plaintiff filed the lawsuit in an improper venue. *See Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724-25 (3d Cir. 1982). Defendants have not met this burden. Venue is proper in this forum because it is a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2). Even if venue would lie in California as well, "[v]enue, of course, may be proper in more than one district." *TIG Ins. Co. v. NAFCO Ins. Co.*, 177 F.Supp.2d 561, 567 (N.D. Tex. 2001) (Sanders, J.). The court therefore denies defendants' motion to dismiss based on a claim of improper venue.

\*   \*   \*

Defendants' November 22, 2004 motion to dismiss is denied.

**SO ORDERED**.

February ___11___, 2005.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

---

[10]In the further alternative, defendants move the court to transfer the case to California under 28 U.S.C. § 1406(a). The court denies this request.